## Case No. 9,474.

### The MERRIMAC.

[1 Ben. 490.] [1]

District Court, S. D. New York. Oct., 1867.

SEAMEN'S WAGES—FORFEITURE—DESERTION—FORM OF OATH—CHINAMAN.

1. Where a sailor deserted from a vessel, before the voyage for which he was shipped was completed, and never afterwards made any attempt to return to his duty: *Held*, that he had forfeited his wages then due, irrespective of the statute of July 20, 1790 [1 Stat. 131].

2. The libellant, a Chinaman, was offered as a witness in his own behalf, and was sworn in the usual way. Objection was made, on behalf of the claimants, that the oath thus taken was not binding upon him. The court directed the claimants to examine him on that point. He stated that he did not know the name of the book that he was sworn on, but that, if he should say anything that was not true, the court would punish him, and after he was dead he should "go down there." making an emphatic gesture downward with his hand: *Held*, that a witness must be sworn in such a way as was binding on his conscience.

3. The libellant might be examined on the oath which he had taken.

This was a libel by William A. Corning against the bark Merrimac, and David Marshall her master, to recover wages, and the value of clothes alleged by the libellant to have been left on board of the vessel, to the amount of $404. The defence set up was desertion. The libellant testified, that he was sick in Havana, and left the vessel, taking his clothes with him, and that he went to the hospital, and, after being there some days, was put again on board of the vessel, and, after being on board of her a day or two, again left her, and did not return to her. He alleged ill treatment on board as the cause of this second leaving; but as to this his evidence was contradicted. He afterwards made his way to New York, and, finding the bark there, filed his libel. On the trial of the cause, the libellant offered himself as a witness, and was sworn in the usual way. The claimant objected to this, on the ground that the libellant was a Chinaman, and that the ordinary oath upon the Bible was not binding upon him. The court directed the claimants to examine him on this point. The libellant, on examination, said, that he was a China-

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

man, but had left China when he was fifteen years old; that he did not know the name of the book upon which he was sworn; that if he should tell anything that was not true, the court would punish him; and, on being asked if anything would happen to him after he was dead, if he did not tell the truth, he answered that he would "go down there," making an emphatic gesture downward with his hand. The court ruled that a witness must be sworn in such a way as was binding upon his conscience, and that the libellant, on this testimony of his, might be examined. The libellant was then examined. The claimants put in evidence a deposition which he had given de bene esse, contradicting in some respects the evidence which he had given on the stand.

A. Nash, for libellant.

Benedict & Benedict, for claimants.

BLATCHFORD, District Judge. This is a libel by a seaman to recover his wages and the value of certain clothing and other personal property. The libellant shipped at Boston, as cook and steward, on the 3d of January, 1866, at $35 a month, for a voyage from Boston to Havana, and thence where the master might direct, and finally to a port of discharge in the United States, the voyage not to exceed six calendar months. He signed the proper shipping articles, containing the above particulars, at Boston. He joined the vessel on the day he shipped. She left Boston January 12th, and arrived at Havana February 2d, and left Havana again on the 1st of March. The libellant went to Havana in the vessel, discharging his duties, but he did not leave Havana in the vessel. The defence set up in the answer is, that the libellant deserted from the vessel at Havana, and thereby forfeited all his wages. This defence is, I think, proved. The clear weight of the evidence is, that the libellant left the vessel and her service at Havana on the 26th of February, not only without leave and against his duty, but with an intent not again to return to his duty. Cloutman v. Tunison [Case No. 2,907]. He never afterwards made any attempt to return to his duty. I place my decision on this ground, irrespective of the statutory forfeiture of wages insisted on under the fifth section of the act of July 20, 1790, in connection with the entries in the log book. The libellant, in fact, deserted twice; once on the 11th of February, and once on the 26th. But one desertion, the second one, is set up in the answer, and, whatever circumstances attended the first desertion, as involving the question whether or not the illness of the libellant furnished a sufficient excuse for his leaving the vessel on the first occasion, his second leaving was a plain desertion, unrelieved by any mitigating circumstances. It was not induced by any ill treatment on the part of the master and officers. The evidence of the libellant himself is whol-

ly unreliable. There are so many material contradictions between his testimony given orally at the trial, and his deposition taken de bene esse before the trial, as to show that he is entirely unworthy of credit.

As to the clothing and other articles which the libellant left on board of the vessel when he deserted, there is nothing shown to charge the vessel with liability for them, and there is no sufficient evidence that the master ever had any of them.

The libel must be dismissed.